UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, | ) ) ) | |
| Petitioner, | ) ) | No. 1:22-CV-02435 |
| v. | ) ) | Judge Edmond E. Chang |
| WISCONSIN CENTRAL, LTD., | ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

A railroad-employee union, the Brotherhood of Locomotive Engineers and Trainmen, petitioned this Court to enforce the arbitration award of a Public Law Board reinstating Jason King to his employment as a train engineer. R. 1, Pl.'s Pet. In its counterclaim, Wisconsin Central petitioned this court to vacate the Public Law Board's award. R. 9, Def.'s Answer and Pet. Wisconsin Central now moves for summary judgment to set aside the award. R. 16, Def.'s Mot. BLET (the union's acronym) cross-moves for summary judgment to enforce the award and for damages, attorneys' fees, and costs. R. 21, Pl.'s Mot. and Opp.[1]

**I. Background**

When operating a train near Fremont, Wisconsin, Jason King, a locomotive engineer, found himself at the bottom of a ditch next to the train. R. 21-2, Pl.'s Resp. DSOF ¶¶ 7, 9; R. 18-2, Middleton Decl. Exh. A, Hearing Tr. at 16. The parties agree

---

[1]The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, and 45 U.S.C. § 153 First (p), First (q), and Second.

that the train was approaching a bridge that required travel at 35 mph, that the train's "positive train control system" (known as PTC in train-operations parlance) reported that the train had to reduce speed within 45 seconds as it approached the bridge, and that when the PTC system gave a 30-second warning for reducing speed, King was not in the cab. Pl.'s Resp. DSOF ¶ 8; Hearing Tr. at 49–50. Keith Ahlstrom, the train conductor, was in the cab but was not qualified operate the engine, so when the PTC system warning went off, he decided to allow the system to automatically stop the train instead of applying the emergency break, because he did not know where King was. *Id.*

Wisconsin Central initiated an investigatory hearing and then fired King for abandoning the controls of the locomotive, leaving the cab, and then jumping or purposefully falling from the locomotive. Pl.'s Resp. DSOF ¶ 16; R. 18-2, DSOF Exh. 2, Middleton Decl. ¶ 3. BLET and King allege that he accidentally fell off the train and was wrongfully terminated. R. 21-3, PSOF ¶¶ 2, 3; R. 21-5, PSOF Exh. 2, Ruef Decl. ¶ 5. BLET's chairman appealed the dismissal in accordance with the terms of their collective bargaining agreement, Wisconsin Central denied the appeal, and the parties then attended a conference which likewise did not resolve BLET's claim. Pl.'s Resp. DSOF ¶¶ 17–19; Middleton Decl. ¶ 4. BLET then submitted its claim for resolution by a Public Law Board, an arbitral body that resolves labor disputes based on the "on property" record and does not take new evidence. Pl.'s Resp. DSOF ¶¶ 20, 21; Middleton Decl. ¶ 5. Public Law Boards are convened to resolve a particular claim

and are governed by the terms of the parties' arbitration Agreement signed by both Wisconsin Central and BLET. Pl.'s Resp. DSOF ¶ 22; R. 18-3, DSOF Exh. 3.

On November 8, 2021, the assigned Arbitrator of the dispute informed the parties that she preferred to receive electronic copies of their submissions. R. 18, DSOF ¶ 22; Middleton Decl. ¶ 6. The next day, Wisconsin Central uploaded its submission to Google Drive. DSOF ¶ 23; Middleton Decl. ¶¶ 7, 8. The uploaded submission included a nine-page argument, which cited to Exhibits A through F—but only part of Exhibit A (which was the investigation hearing transcript) was uploaded along with the argument. *Id*. Wisconsin Central alleges that it mistakenly did not upload the remainder of Exhibit A and any parts of Exhibits B through F. *Id*. BLET for its part only uploaded its argument, though the union's argument likewise cited to parts of the hearing transcript not uploaded to Google Drive; according to the union, it was "standard practice" for Wisconsin Central, and not BLET, to submit the hearing transcript to the Public Law Board. Pl.'s Resp. DSOF ¶ 26; R. 18-3, DSOF Exh. 4, BLET Answer to Counterclaim ¶ 27.

After the uploading mishap, around two weeks later on November 22, 2021, the parties presented their initial arguments to the Board. DSOF ¶ 27; Middleton Decl. ¶ 9. After argument, BLET objected to Wisconsin Central's incomplete evidentiary submission.[2] DSOF ¶ 28; Middleton Decl. ¶ 9. Wisconsin Central alleges this

---

[2] Wisconsin Central alleges that BLET objected that Wisconsin Central had not "properly submitted the entire record." DSOF ¶ 28. BLET alleges that that it objected "to the inclusion of the additional documents post-argument … because they were not submitted at all and therefore were not a part of the record." Pl.'s Resp. DSOF ¶ 28.

3

was the first time that its attorney for the arbitration, Antoinette Middleton, realized her error in uploading the submission, and she requested permission to upload it immediately.[3] DSOF ¶ 29; Middleton Decl. ¶ 10. BLET objected and the Arbitrator denied Wisconsin Central's request to provide the exhibits. *Id.*

The Arbitrator then circulated a draft award to the parties for review, which proposed to disregard the investigation hearing transcript:

> [A]n incomplete transcript of the November 18, 2020, investigation hearing was included in the record presented to this Board. Circular 1 makes clear that the submission by the Carrier must include all evidence and data in support of its position. The Carrier in a discipline case bears the burden of proof and that burden of proof cannot be met when evidence is not presented.

DSOF ¶ 30; R. 18-2, Middleton Decl. Exh. C. As a result of this "fatal procedural flaw," the draft award would reach "no decision as to the merits of the claim" and would order Wisconsin Central to reinstate King. *Id.* In response, attorney Middleton requested a second session, during which Wisconsin Central alleges that she argued that Circular 1 (a reference to 29 C.F.R. §§ 301.1-301.9) only applies to National Railroad Adjustment Board proceedings, and not to Public Law Boards. DSOF ¶¶ 31, 32; Middleton Decl. ¶ 12. Wisconsin Central also alleges that Middleton again requested that the Public Law Board accept and review the full on-property record. *Id.* The Arbitrator circulated a revised and final award, which omitted the reference to Circular 1, but maintained that "the record is devoid of evidence that [King] jumped or

---

[3]BLET alleges that Middleton did not state at the hearing that documents she intended to upload were not uploaded, PSOF ¶ 7; Ruef Decl. ¶ 13, but the Court notes that BLET admitted to Wisconsin Central's statement that "Middleton offered to submit a complete copy of WC's submission immediately" at the hearing. Pl.'s Resp. DSOF ¶ 29.

4

purposefully fell from the locomotive. There is nothing in the record showing that he concealed facts known to him." R. 18-2, Middleton Decl. Exh. D. Because the "Carrier has the burden of proof to show the employee was guilty of the offense" the Arbitrator found that the Board "ha[d] no choice other than to sustain the claim." *Id.*

The parties' Public Law Board Agreement provides certain terms on submissions to the Board. Section H states that:

> Should either Party decide to file a written submission, said submission must be in the form of one written and one electronic copy. Each Party must exchange their written submissions containing all of the relevant facts upon which they rely together with all documentary evidence in exhibit form, the Agreement or rules thereof involved, if any, and their arguments in support of their positions at least fourteen (14) days prior to the hearing, either by First Class mail or overnight delivery. Each written submissions shall be limited to the issues raised by the Parties during the handling of the dispute on the property. … Each party shall send (1) copy of each of their submissions to the Neutral Member of the Board, at the same time they are exchanged to each Board Member.

DSOF Exh. 3, Agreement § H. Section J states that at the hearing before the Board, "[t]he Parties may present either orally or in writing, rebuttal statements only to the written submission. The Board shall have authority to request the production of additional evidence from either party."[4] *Id.* § J.

Here in federal court, Wisconsin Central moves for summary judgment, arguing that the Public Law Board acted outside of its jurisdiction and violated Wisconsin Central's due process rights when it decided the dispute without considering

---

[4]This is in contrast to 29 C.F.R. § 301.7(b), where parties "are … charged with the duty and responsibility of including in their original written submission, all known, relevant, argumentative facts and documentary evidence," without specifying that the National Railroad Adjustment Board may request additional evidence.

5

Wisconsin Central's accidentally omitted evidence. Def.'s Mem. at 14–15. BLET cross-moves for summary judgment and requests enforcement of King's reinstatement and an award of damages, attorneys' fees, and costs. Pl.'s Mem. at 13–15.

## II. Analysis

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

In deciding cross motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So when the Court evaluates Wisconsin Central's summary judgment motion, BLET gets the benefit of reasonable inferences; conversely, when evaluating BLET's motion, the Court gives Wisconsin Central the benefit of the doubt.

District court review of arbitration awards under the Railway Labor Act is "among the narrowest known to the law." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987) (cleaned up).[5] An award may only be set aside by the district court for: (1) failure to comply with the Railway Labor Act; (2) failure to "conform or confine itself, to matters within the scope of the division's jurisdiction"; or (3) "fraud or corruption." 45 U.S.C. § 153 First (q). If a carrier does not comply with an award, then a district court must enforce the award or may set it aside, but only on those three statutory grounds. § 153 First (p). These provisions apply to decisions of the Public Law Board, which is an optional dispute mechanism created under the Railway Labor Act as an alternative to the National Railroad Adjustment Board. § 153 Second, § 157; *see Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 918 (7th Cir. 1985). The Seventh Circuit has also recognized a fourth ground for review of arbitration awards, namely, when a party is denied constitutional due process. *See, e.g.*, *Pokuta v. Trans World Airlines, Inc.*, 191 F.3d 834,

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

7

839 (7th Cir. 1999); *see also Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 75 (2009) (acknowledging without deciding the circuit split on whether the RLA precludes judicial review of due process violations). Courts should not reach a due process question, however, if the arbitration award may be set aside on statutory grounds. *Union Pac. R.R. Co.*, 558 U.S. at 80–81.

## A. Jurisdiction

Arbitration awards may be set aside under the Railway Labor Act if the Public Law Board does not "conform, or confine itself, to matters within the scope of [its] jurisdiction." 45 U.S.C. § 153 First (q). Jurisdiction means "adjudicatory competence" and "the power to decide, one way or the other." *Johnson v. CSX Transp., Inc.*, 343 Fed. Appx. 138, 139 (7th Cir. 2009). The Supreme Court has held that the Railway Labor Act's "instructions on party submissions—essentially pleading instructions—are claim-processing, not jurisdictional, rules." *Union Pac. R.R. Co.*, 558 U.S. at 85. In particular, the Supreme Court highlighted that the Act's requirement to provide "a full statement of the facts and all supporting data bearing upon the disputes" is not a jurisdictional rule. *Id.* at 84–85 (cleaned up). An analogous rule in the parties' arbitration agreement is at issue here: the requirement to submit all the evidence in written submissions and the Public Law Board's authority to request additional evidence at the hearing. Def.'s Mem. at 12–13; DSOF Exh. 3, Agreement §§ H, J.

Although prior Seventh Circuit decisions have held that "[t]o remain within the scope of its jurisdiction, the essence of the PLB's decision must be contained in the terms of the agreement between the union and the employer," *Lyons v. Norfolk &*

8

*Western Ry. Co.*, 163 F.3d 466, 469 (7th Cir. 1999), the Supreme Court's more recent clarifications on jurisdiction establish that the PLB's decision to admit or exclude evidence is *not* jurisdictional. Wisconsin Central contends that the award "does not draw its essence" from the arbitration agreement because the PLB did not request evidence in the form prescribed by Section H and did not exercise its authority to request additional evidence under Section J. Def.'s Mem. at 12–13. But even if the PLB misinterpreted the parties' agreement's rules on evidence, the PLB still had authority to decide the question. *See Union Pac. R.R. Co.*, 558 U.S. at 84–85. The PLB thus did not act outside its jurisdiction when deciding not to admit Wisconsin Central's evidence at the hearing. This Court may not set aside the PLB's award for failure to confine itself to its jurisdiction under 45 U.S.C. § 153 First (q).

### B. Due Process

Having said that, the Seventh Circuit allows review of arbitration awards for due process violations. *See, e.g.*, *Pokuta*, 191 F.3d at 839; *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 522 F.3d 746, 750 (7th Cir. 2008). "The requirements of due process are relaxed when the tribunal is an arbitral tribunal rather than a court." *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 905 F.3d 537, 542–43 (7th Cir. 2018) (cleaned up). The arbitrator must provide a "fundamentally fair hearing" that "meets the minimal requirements of fairness—adequate notice, a hearing on the evidence and an impartial decision." *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720 (7th Cir. 2006). Arbitration decisions to admit or exclude evidence under existing rules are generally within the Public Law Board's

9

discretion and not reviewable. *Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 750; *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987). But the Seventh Circuit instructs that arbitration decisions to admit or exclude evidence that "impos[e] … a new procedural rule without adequate notice to the parties" may deny the parties their "fair opportunity to be heard" and violate due process. *Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 752. For example, when an arbitration board dismissed a claim for lack of evidence of conferencing in the written submissions and did not allow this evidence at the hearing—despite the parties' agreement that conferencing did happen and despite the lack of any prior rule requiring that the conferencing evidence be in the written submission—the Seventh Circuit held that the award violated the party's due process rights. *Id.* at 757–58.[6]

The parties' agreement to arbitrate explicitly conferred authority on the Public Law Board to request additional evidence at the hearing. DSOF Exh. 3, Agreement § J. Both parties were aware of the entire on-property record and both parties cited to that record in their written submissions to the Board. Pl.'s Resp. DSOF ¶¶ 25, 26. Wisconsin Central cited to parts of the investigation hearing transcript that were not submitted (Exhibit A) and Exhibits B through F.[7] *Id.* Indeed, BLET too cited to parts

---

[6]The Supreme Court affirmed the Seventh Circuit's decision but held that the case should have been decided solely on statutory grounds, rather than statutory and constitutional due process grounds. *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 80–81 (2009). But the discussion in the Seventh Circuit opinion remains persuasive for its rationale in determining how to apply the requirements of due process.

[7]The parties agree that Exhibit A as uploaded did not include the entire hearing transcript and hearing exhibits. Pl.'s Resp. DSOF ¶ 25; R. 18-2, Middleton Decl. Exh. B. Wisconsin Central further alleges that Exhibits B through E were decisions of the National Railroad Adjustment Board, and Exhibit F was King's employee personal record. DSOF ¶ 23. BLET

10

of the hearing transcript that Wisconsin Central did not submit. *Id.* The omitted portions of the hearing transcript included, crucially, King's own testimony and an engineering expert's testimony about King's fall, as well as the hearing exhibits. Pl's Resp. DSOF ¶ 25; R. 18-2 Middleton Decl. Exh. B. Despite this, the Public Law Board decided that it could not request additional evidence from the parties and had "no choice" but to find that Wisconsin Central did not meet its burden of proof. Middleton Decl. Exh. D. That decision—the Board had "no choice"—created a new rule about evidence without prior notice to the parties and that contradicted the terms of their agreement, which gives the Board discretion to receive more evidence. This new rule deprived Wisconsin Central of its fair opportunity to be heard on the evidence. The same rationale would apply if it were BLET that had lost the arbitration because the union had accidentally not submitted what each side assumed was submitted.

BLET's argument that it would be unfair to admit the evidence at the hearing because the parties' agreement required all evidence to be included in the written submissions is unconvincing. Pl.'s Mem. at 12–13. BLET had knowledge of the entire on-property record before the arbitration proceeding and indeed *expected* the Public Law Board to consider that evidence, as demonstrated by the union's own citations to the investigation hearing transcript in its written submission to the PLB. It is true that the Seventh Circuit instructs that review of arbitration awards for due process

---

denies these allegations, because Wisconsin Central has not provided evidence supporting the content of each of its exhibits as it intended to upload them. Pl.'s Resp. DSOF ¶ 23. But the parties agree that the Public Law Board knew that the record was incomplete and found that Wisconsin Central did not meet its burden of proof for that reason. Pl.'s Resp. DSOF ¶¶ 30, 34; Middleton Decl. Exhs. C, D.

11

violations is "exceptionally narrow": courts should only consider whether the arbitrator "interpreted the contract" and not whether they "erred" or even "grossly erred in interpreting the contract." *Bhd. of Locomotive Eng'rs & Trainmen*, 522 F.3d at 757 (cleaned up). Here, however, the PLB "create[d] a new requirement on its own," *id.*, namely, that it could not consider the evidence that both parties cited to in their briefs because it was accidentally not uploaded to Google Drive. Yet the PLB had discretionary authority arising from the parties' agreement, which granted the PLB the authority to request additional evidence at the hearing. DSOF Exh. 3, Agreement § J. The PLB created a new rule without notice to the parties and thus violated Wisconsin Central's due process rights. Wisconsin Central's motion for summary judgment is granted.

### C. Reinstatement, Damages, Fees, and Costs

Because Wisconsin Central's motion for summary judgment is granted, BLET's cross-motion for the Court to enforce the arbitration award and order King's reinstatement is denied. BLET's requests for damages, attorneys' fees, and costs are also denied for the same reason.

## III. Conclusion

Wisconsin Central's motion for summary judgment is granted. BLET's cross-motion for summary judgment is denied. The parties' dispute is remanded to the Public Law Board for further proceedings in accordance with this decision. *See* 45 U.S.C. § 153 First (q).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 29, 2024